UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
www.flsb.uscourts.gov

In re:                                               Chapter 11
                                                     Case No.:  18-17154-RAM
SJKWD, LLC,

         Debtor.
_____/


**DEBTOR'S PLAN OF REORGANIZATION**


Furr & Cohen, P.A.
*Attorneys for the Debtor*
Aaron A. Wernick, Esq.
2255 Glades Road, Suite 301E
Boca Raton, Florida 33431
(561) 395-0500
(561) 338-7532 fax
awernick@furrcohen.com

TABLE OF CONTENTS

ARTICLE I Definitions ............................................................................................................... 1

ARTICLE II Classification of Claims and Interests ................................................................. 6

ARTICLE III Treatment of Claims and Interests Under the Plan ........................................... 6

ARTICLE IV Impairment ......................................................................................................... 16

ARTICLE V Means of Execution and Security for Payments .................................................. 16

ARTICLE VI Executory Contracts .......................................................................................... 17

ARTICLE VII Duties and Fees owed to the Office of the U.S. Trustee ................................... 17

ARTICLE VIII Effect of Confirmation .................................................................................... 17

ARTICLE IX Post-Confirmation Liquidated Debtor's Structure…………... …………...……19

ARTICLE X "Cram Down", Modification, Substantive Consolidation ..................................... 20

ARTICLE XI Retention of Jurisdiction ................................................................................... 21

ARTICLE XII Miscellaneous .................................................................................................... 22

DEBTOR'S PLAN OF REORGANIZATION

## ARTICLE I
### DEFINITIONS

For the purposes of this Plan and to the extent not otherwise provided herein, the terms below shall have the respective meanings hereinafter set forth and, unless otherwise indicated, the singular shall include the plural and capitalized terms shall refer to the terms as defined in this Article and, any term used in the Plan which is not defined below, but which is used in the Bankruptcy Code, shall have the meaning assigned to it in the Bankruptcy Code.

1.1    "Administrative Claim" shall mean a Claim against the Estate allowed by order of the Bankruptcy Court pursuant to Section 503(b) of the Bankruptcy Code and that is entitled to priority under Section 507(a) of the Bankruptcy Code, or incurred by the Debtor in its ordinary course of business from June 14, 2018 to the Confirmation Date where such claim has been approved by the Court, and shall include all fees payable pursuant to Section 1930 of Title 28 of the United States Code.

1.2    "Allow", "Allowed", "Allowance" or words of similar meaning shall mean with respect to a Claim against the Estate that is: (a) either (i) scheduled by the Debtor in its Schedules in a liquidated amount and not listed as contingent, unliquidated, zero, underdetermined or disputed; or (ii) asserted in the Case by a proof of a claim that has been timely filed, or deemed timely filed with the Court pursuant to the Bankruptcy Code, the Bankruptcy Rules and/or any applicable orders of the Court, or late filed with leave of Court; and (b) either (i) not objected to within the period fixed by the Bankruptcy Code, the Bankruptcy Rules and/or applicable orders of the Court; or (ii) that has otherwise been allowed by a Final Order or pursuant to this Plan that is no longer subject to appeal or certiorari and as to which no appeal or certiorari is pending. An Allowed Claim includes a previously Disputed Claim to the extent such Disputed Claim becomes

Allowed when the context so requires, and shall be net of any valid setoff amount, which amount shall be deemed to have been set off in accordance with the provisions of this Plan.

1.3    "Bankruptcy Code" shall mean the Bankruptcy Reform Act of 1978, as amended, Title 11 of the United States Code, which governs the Chapter 11 case of the Debtor.

1.4    "Bankruptcy Court" shall mean the United States Bankruptcy Court for the Southern District of Florida having jurisdiction over the Chapter 11 case of the Debtor or the United States District Court for the Southern District of Florida having jurisdiction over any part or all of the Chapter 11 case of the Debtor in respect of which the reference has been withdrawn pursuant to Section 157(d) of Title 28 of the United States Code.

1.5    "Bankruptcy Rules" shall mean the Federal Rules of Bankruptcy Procedure and the Local Rules of the Bankruptcy Court (including any applicable local rules of the United States District Court for the Southern District of Florida) as now in effect or hereafter amended.

1.6    "Business Day" shall mean a day other than a Saturday, Sunday or legal holiday.

1.7    "Case" shall mean the chapter 11 case of the Debtor pending before the Court, Case No. 18-17154-RAM.

1.8    "Cash" shall mean legal tender of the United States or its equivalents, including but not limited to bank deposits, checks and other similar items.

1.9    "Causes of Action" shall mean any and all actions, suits, claims for relief, causes of action, chapter 5 causes of action, accounts, controversies, agreements, promises, rights to legal remedies, rights to equitable remedies, rights to payment, and claims, whether known or unknown, reduced to judgment, not reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, secured, unsecured, and whether asserted or assertable

directly or derivatively, in law, equity or otherwise, whether arising prior to or after the Petition Date, and expressly including any defenses or equitable remedies necessary for the adjudication of such Causes of Action.

1.10    "Claim" shall have the meaning provided for such term in section 101(5) of the Bankruptcy Code.

1.11    "Class" shall mean a group of Claims or Equity Interests described in Article III of this Plan.

1.12    "Confirmation Date" shall mean the date on which the Bankruptcy Court enters the Confirmation Order on its docket.

1.13    "Confirmation Order" shall mean a Final Order of the Bankruptcy Court confirming the provisions of this Plan, pursuant to section 1129 of the Bankruptcy Code.

1.14    "Confirmation Hearing" shall mean the hearing at which the Court confirms the Plan.

1.15    "Court" shall mean the United States Bankruptcy Court for the Southern District of Florida, or any other court exercising competent jurisdiction over the Case or any proceeding therein.

1.16    "Debtor" shall mean SJKWD, LLC, the Debtor in Possession in this Chapter 11 bankruptcy proceeding currently pending in the United States Bankruptcy Court for the Southern District of Florida, Case No. 18-17154-RAM.

1.17    "Disbursing Agent" shall mean the person appointed under the Plan to administer and disburse the cash payments to be made pursuant to paragraph 5.2 of the Plan. The Disbursing Agent shall be Stan Jackowski.

3

1.18    "Disclosure Statement" shall mean the Disclosure Statement that relates to this Plan, and as approved by the Court pursuant to section 1125 of the Bankruptcy Code, as such Disclosure Statement may be amended, modified, or supplemented (and all exhibits and schedules annexed thereto or referred to therein).

1.19    "Disputed Claim" means any Claim designated as disputed, contingent or unliquidated in the Debtor's Schedules filed in connection with this Case, or any claim against which an objection to the allowance thereof has been, or will be, interposed, and as to which no Final Order has been entered.

1.20    "Distribution" shall mean the distribution of Cash or other property, as the case may be, in accordance with this Plan.

1.21    "Distribution Address" shall mean the address for a holder of an Allowed Claim as set forth in a proof of claim, as amended or supplemented. If no proof of claim is filed with respect to a particular Claim, such defined term means the address as set forth in the Debtor's Schedules.

1.22    "Du-Rite" shall mean affiliated (and former) debtor Du-Rite Company.

1.23    "Du-Rite Case" shall mean the chapter 11 case of Du-Rite, Case No.18-17194-RAM.

1.24    "Effective Date" shall mean the fifteenth day following the Confirmation Date, and in the event that such date is not a Business Day, the next day thereafter.

1.25    "Equity Interest" shall mean an equity security within the meaning of section 101(16) of the Bankruptcy Code.

1.26    "Estate" means property of the Debtor as defined in section 541 of the Code.

1.27    "Final Order" shall mean an order of judgment of the Court, as entered on the

4

docket of the Court, that has not been reversed, stayed, modified, or amended, and as to which (a) the time to appeal, seek review or rehearing or petition for certiorari has expired and no timely filed appeal or petition for review, rehearing, remand or certiorari is pending, or (b) any appeal taken or petition for certiorari filed has been resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought; provided, however, that the possibility that a motion under Section 502(j) of the Bankruptcy Code, Rule 59 or Rule 60 of the Federal Rules of Civil Procedure, or any analogous rule under the Bankruptcy Rules or other rules governing procedures in cases before the Court, may be filed with respect to such order shall not cause such order not to be a Final Order.

      1.28    "Impaired" shall mean an Allowed Claim that is impaired within the meaning of section 1124 of the Code.

      1.29    "Initial Payment Date" shall mean the first of the month following the Effective Date.

      1.30    "LPI" shall mean lessor/landlord LPI Key West Associates, LTD.

      1.31    "McLane Food" shall mean McLane Food Service, Inc.

      1.32    "Petition Date" shall mean June 14, 2018, which is the date the Debtor filed its voluntary petition for reorganization under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

      1.33    "Plan" shall mean this plan in its entirety, together with all addenda, exhibits, schedules and other attachments hereto, in its present form or as it may be modified, amended or supplemented from time to time.

      1.34    "POC" shall mean proof of claim.

1.35    "Priority Claim" shall mean a Claim entitled to priority under section 507(a)(3)-(7) of the Bankruptcy Code.

1.36    "Priority Tax Claim" shall mean a Claim entitled to priority under section 507(a)(8) of the Bankruptcy Code.

1.37    "Rejection Claim" shall mean a Claim arising under section 502(g) of the Bankruptcy Code from the rejection under section 365 of the Bankruptcy Code, or under this Plan, of an executory contract or unexpired lease of the Debtor that has not been assumed.

1.38    "Reorganized Debtor" shall mean the Debtor post-confirmation.

1.39    "Schedules" or "Amended Schedules" shall mean the schedules and any amended schedules of assets and liabilities filed or which may be filed by the Debtor with the Court in this Case.

1.40    "Secured Claim" shall mean a Claim that is (a) secured by a valid and perfected lien on property in which the Estate has an interest, but only to the extent of the value of the Claimant's interest in the Estate's interest in such property as determined pursuant to Section 506(a) of the Bankruptcy Code or (b) subject to setoff under section 553 of the Bankruptcy Code, but only to the extent of the amount subject to setoff, as determined pursuant to section 553 of the Bankruptcy Code.

1.41    "Simmons Bank" shall mean Simmons Bank, SBA Lending Division.

1.42    "United States Trustee" shall mean the Assistant United States Trustee for the Southern District of Florida.

1.43    "Unsecured Claim" shall mean any Claim that is not (a) an Administrative Claim, (b) a Priority Claim; (c) a Priority Tax Claim; or (d) a Secured Claim.

**ARTICLE II**
**CLASSIFICATION OF CLAIMS AND INTERESTS**

2.1 An Allowed Claim is part of a particular class only to the extent that the Allowed Claim qualifies within the definition of that Class, and is in a different Class to the extent that the remainder of the Claim qualifies within the description of a different Class.

**ARTICLE III**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

3.1 <u>General</u>. Unless otherwise specified, all payments under this Plan shall commence on the Initial Payment Date.

3.2 <u>Administrative Claims</u>. All Allowed Administrative Claims shall be paid (a) in full on the Effective Date or, if such expense is objected to, the date of a Final Order allowing any such administrative claim, whichever is later; or (b) upon such other terms as may be agreed to between the Debtor and each such administrative claimant.

An Administrative Claim is "allowed" if, at a minimum, a claimant/creditor requests payment by the Administrative Claims Bar Date (defined below), with the exception of (a) Debtor's counsel and other Estate professionals, who shall final a Fee Application by the deadline set by the Court, approximately 21 days before the plan confirmation hearing; (b) the Office of the U.S. Trustee; and (c) the clerk of the Bankruptcy Court. All administrative expenses are subject to Court approval.

McLane Foodservice Inc. has an administrative claim in the amount of $21,346.37 pursuant to section 503(b)(9). This claim will be paid in full in 12 equal monthly installments of $1,778.87 commencing on the Initial Payment Date. Furr & Cohen, P.A.'s administrative expense claim of $39,000.00 will be paid in 12 equal monthly installments of approximately $3,250.00 commencing

7

on the Initial Payment Date.

**ADMINISTRATIVE CLAIMS BAR DATE**: All requests for payment of Administrative Claims, other than with respect to applications for payment of professional fees and other than U.S. Trustee and court fees, were to be filed with the Court and served upon the Debtor by **February 4, 2019,** as set by this Court's *Order Granting Ex Parte Motion to Set Administrative Claims Bar Date* [ECF 107]. Any Administrative Claim for which an application or request for payment was not filed within such time period shall be discharged and forever barred. As no requests were filed by the Administrative Claims Bar Date, only McLane FoodService Inc., Furr Cohen, P.A., the Office of the U.S. Trustee, and the Clerk of the Bankruptcy Court have administrative expense claims.

3.3 All fees due under 11 U.S.C. §1129(a)(12) shall be paid as required by 28 U.S.C. §1930.

3.4  Tax Claims. Priority tax claims are assessed, unsecured income, employment, and other taxes as described by Section 507(a)(8) of the Bankruptcy Code. To the extent there are any Allowed Priority Tax Claims, any such Allowed Priority Tax Claimholder shall receive deferred cash payments over a period not to exceed five (5) years following from the Petition Date, of a value, as of the Effective Date of the Plan, equal to the amount of the Allowed Priority Tax Claim, plus statutory interest. The Debtor may pay any or all amount of said claim before such date and not incur a prepayment penalty.

3.5  Classification of Claims.

**Class 1 – Allowed Claim of Simmons Bank:**

(a)    Description:  Class 1 consists of the secured claim of Simmons Bank based on a General Security Agreement, dated January 2017, pursuant to which the Debtor and affiliate Du-

8

Rite granted Simmons Bank a lien on all of it and Du-Rite's assets, including, among other things, accounts, chattel paper, investment property, deposit accounts, documents, goods, equipment, farm products, general intangibles, instruments, inventory, money, letter of credit rights, causes of actions and other personal property. The security interest was (and is) perfected by Simmons Bank's filing of a UCC-1 Financing Statement against the Debtor with the Florida Secured Transaction Registry on February 9, 2017 at document #201700252451. In addition, Stan and Barbara Jackowski provided personal guarantees and a second mortgage on their homestead. Simmons Bank filed a proof of claim in the amount of $906,550.58 [POC 8-10].

(b)    Treatment:  Simmons Bank's claim will be treated as follows:

1.    The claim amount will be reduced to $420,000.00 (the "Total Claim Amount").

2.    Simmons Bank will not have any other claim, including a Class 3 General Unsecured Claim.

3.    The Total Claim Amount will be paid over 20 years, fully amortized, at a fixed 6% rate, for monthly principal and interest payments of $3,009.00.

4.    During the term of this payment plan, neither Simmons nor SBA will enforce the personal guarantees of Stan and Barbara Jackowski, though those personal guarantees will still remain in place in the event of default. In addition, neither Simons nor the SBA will move to foreclose on the mortgage on the Jackowski's residence as long as SJKWD remains current on the above payment terms. SBA's lien on the Debtor's assets as well as the Jackowski's homestead will remain until the completion of payments.

5.    Not more than 60 days after the Total Claim Amount is paid, including the

interest as described herein, Simmons Bank shall record a satisfaction of lien (as to the claim referenced herein) in the Monroe County Official Records. In addition, Simmons Bank shall record a satisfaction of mortgage as to the Jackowski's personal residence and release the Jackowskis of any further liability under their personal guarantees.

6.    There will be no prepayment penalty in the event the Debtor pays all or a portion of the Total Claim Amount before the maturity date.

7.    Except as modified herein, the remaining terms of the prepetition loan documents will remain unchanged.

8.    The provisions contained herein shall apply to any entity that acquires the aforementioned loan as well as Simmons Bank's and SBA's successors or assigns.

(c)    Impairment: The Class 1 Claim is Impaired, and the Allowed Class 1 Claimholder is entitled to vote to accept or reject the Plan.

**Class 2 – Allowed Claim of LPI**

(a)    Description: Class 2 consists of the Allowed Claim of landlord LPI based on a commercial lease agreement entered into with the Debtor for the restaurant location known as Denny's Restaurant located at 2710 N. Roosevelt Blvd., Key West, Florida 33040. The regular monthly lease payment is $19,219 and the remaining term on the lease is 19 years. Postpetition, since September 1, 2018, the Debtor has maintained the regular monthly payments to LPI according to the terms of the prepetition commercial lease agreement.

In addition, there is an arrearage of $63,951.58. Postpetition, LPI received an insurance payout from a business interruption policy which provided for a credit of $8,537.00, reducing the arrearage to $55,414.68 (the "Net Arrearage").

10

(b)     <u>Treatment:</u>   The Debtor shall assume its commercial lease agreement with LPI. The Debtor shall maintain the regular monthly payments to LPI according to the terms of the prepetition commercial lease agreement, in full satisfaction, settlement, and release of all Class 2 Allowed Claims. In addition, the Net Arrearage will be paid in equal monthly payments over 18 months, commencing on the Initial Payment Date, for a monthly payment of $3,078.60. The total monthly payment for the first 18 months after the Effective Date will therefore equal $22,278.60, after which the monthly payment will resume to $19,200.00.

(c)     <u>Impairment:</u>  The Class 2 Claim is Impaired, and the Allowed Class 2 Claimholder is entitled to vote to accept or reject the Plan.

## Class 3 – Allowed General Unsecured Claims

(a)     <u>Description:</u>   Class 3 consists of the Allowed Claims of the general unsecured creditors of the Debtor. As reflected in the list of general unsecured creditors attached as **Exhibit "A"** to the Disclosure Statement, the Debtor estimates the aggregate amount of Class 3 general unsecured claims totals $45,793.83.

(b)     <u>Treatment</u>: Each holder of an Allowed Class 3 claim shall be paid in full. Payments will be made during Year 2 of the Plan, which will be months 13-24 following the Effective Date. Each claimant will share in a *pro rata* distribution of $3,816.15 per month. The Debtor may prepay any or all of the distributions described herein with no prepayment penalty. The contemplated distributions to the Class 3 Claimholders shall be in full satisfaction, settlement, release and discharge of their respective Allowed Class 3 Claims.

(c)     <u>Impairment:</u>  The Class 3 Claims are Impaired and any of the Allowed Class 3 Claimholders are entitled to vote to accept or reject the Plan.

11

**Class 4 – Allowed Equity Interests**:

(a)    <u>Description</u>:  Class 4 consists of the Equity Interests of the Debtor held by Stan Jackowski. All property of the Estate will re-vest in Reorganized Debtor SJKWD. Stan Jackowski shall retain all ownership interests in the Debtor.

(b)    <u>Impairment</u>: Class 4 is Unimpaired and therefore is conclusively presumed to have accepted the Plan.

## ARTICLE IV
### IMPAIRMENT

Classes 1, 2, and 3 are Impaired under this Plan. Impaired classes will be treated as fully set forth in Article III above.

## ARTICLE V
### MEANS OF EXECUTION AND SECURITY FOR PAYMENTS

5.1 All payments as provided for in the Plan shall be funded by the Debtor's Cash on hand and operating income, unless otherwise stated.

5.2 Stan Jackowski is named as the disbursing agent responsible for making the payments under the Plan (the "<u>Disbursing Agent</u>"). The payments shall be made as provided in Article III.

5.3 Any checks mailed by the Disbursing Agent for a payment to a particular creditor which remains not cleared 75 days after the date of mailing shall constitute "Unclaimed Funds" and shall become the Reorganized Debtor's property.

## ARTICLE VI
### EXECUTORY CONTRACTS

Any and all executory contracts and unexpired leases of the Debtor not expressly assumed herein or assumed prior to the Confirmation Date, or are not as of the Confirmation Date the subject of a pending application to assume, shall be deemed to be rejected. The Debtor is assuming the

below unexpired leases and executory contracts:

| Description of Lease or Contract | Name and Address of Other Party | Date Lease or Contract Expires |
|---|---|---|
| The Debtor's lease of the restaurant location known as Denny's Restaurant at 2710 N. Roosevelt Blvd., Key West, Florida 33040. The monthly rent is $19,200. In addition, there is an arrearage of $63,951.58 as of the Petition Date minus a credit of $8,537.00 resulting from the lessor's insurance company paying out on a business interruption claim, for a net amount of $55,414.68 paid over 18 months from the Effective date of the Plan, for an extra monthly payment of $3,078.60. Therefore, the total monthly payment for the first 18 months, commencing on the Initial Payment Date, will be $22,278.60, after which the monthly payment will resume to $19,200. | LPI Key West Associates, LTD, 2614 Tamiami Trail N. #632, Naples, FL 34104 | Expires May 31, 2037 |
| Franchise Agreement with DFO, LLC, which is the corporate entity of franchisor Denny's Restaurants. | DFO, LLC 203 E. Main St., Spartanburg, SC, 29319 | Expires January 31, 2037 |

## ARTICLE VII
### DUTIES AND FEES OWED TO THE OFFICE OF THE U.S. TRUSTEE

With respect to pre-confirmation periods, the Debtor is required to pay the appropriate sums required pursuant to Section 1930(a)(6) within ten days of the entry of the order confirming the Plan. The Debtor must also file all monthly operating reports for the relevant periods indicating the Cash disbursements for the relevant period.

With respect to post-confirmation periods, the Debtor will pay the United States Trustee fee for post-confirmation periods based upon all post-confirmation disbursements made by the Debtor. The Debtor will also file all post-confirmation quarterly operating reports with the Court until the earlier of the closing of this Case or upon dismissal or conversion of this Case.

## ARTICLE VIII
### EFFECT OF CONFIRMATION

Binding Effect. The Plan shall be binding upon and inure to the benefit of the Debtor, all present and former holders of Claims and Equity Interests, and their respective successors and assigns.

No Discharge of Debtor. Pursuant to section 1141(d)(3) of the Bankruptcy Code, Confirmation of the Plan will not discharge Claims against the Debtor; provided, however, that no holder of any Claim or Equity Interest may, on account of such Claim or Equity Interest, seek or receive any payment or other Distribution from, or seek recourse against, the Estate, the Disbursing Agent, and/or their respective successors, assigns and/or property, except as expressly provided in the Plan.

Final Decree as to Debtor. After (a) the confirmation of the Plan, (b) the fulfillment of all matters required to be completed by the Effective Date, and (c) the distribution of the Debtor's first Plan payments, the Debtor (or such other party as the Court shall designate in the Confirmation Order) shall file a motion with the Court to obtain a final decree to close the case. Alternatively, the Court may enter such a final decree on its own motion.

## ARTICLE IX
### POST-CONFIRMATION DEBTOR'S STRUCTURE

The Debtor shall continue to exist after the Effective Date with all assets re-vesting in the Debtor and with all powers of limited liability companies under the laws of the State of Florida and without prejudice to any right to alter or terminate such existence (whether by merger or otherwise) under Florida law. Following the Effective Date, the Debtor shall be free to operate and perform any and all acts authorized by its Operating Agreement without further order from the

14

Court, subject only to the terms of the Plan and Confirmation Order. Upon the Effective Date, the Debtor's management shall remain unchanged, in that Stan Jackowski will continue to act as managing member of the Reorganized Debtor.

Upon the entry of the Confirmation Order, subject to the occurrence of the Effective Date, the property of the Debtor shall be free and clear of all claims and interests of creditors, except as otherwise provided for herein.

**ARTICLE X**
**CRAM DOWN AND MODIFICATION**

Utilization of "Cram Down"

If all of the applicable provisions of 11 U.S.C. §1129(a) other than paragraph (8) are found to have been met with respect to the Plan, the Debtor may seek confirmation pursuant to 11 U.S.C. §1129(b). For the purposes of seeking confirmation under the "cram down" provisions of the Bankruptcy Code, should that alternative means of confirmation prove to be necessary, the Debtor reserve the right to modify or vary the treatment of the claims of the rejecting Classes so as to comply with Section 1129(b) of the Bankruptcy Code.

Modification of Plan

The Debtor may propose amendments to or modifications of this Plan at any time prior to the Confirmation Date with the leave of Court upon notice to parties entitled to receive the same. After confirmation, the Debtor may, with the approval of this Court, and so long as it does not materially adversely affect the interests of creditors, remedy any defect or omission, or reconcile any inconsistencies in the Plan, or in the Order of Confirmation, in such a manner as is necessary to carry out the purposes and effect of this Plan.

The Debtor may modify the Plan at any time after the Confirmation Date and before

substantial consummation of the Plan, but may not modify such plan so that such plan as modified fails to meet the requirements of Sections 1122 and 1123 of the Bankruptcy Code.

Any holder of an Allowed claim or interest that has accepted or rejected the Plan is deemed to have accepted or rejected, as the case may be, such Plan as modified, unless, within the time fixed by the court, such holder changes such holder's previous acceptance or rejection.

The Plan may be modified at any time after the Confirmation Date but before the completion of payments under the plan, whether or not the plan has been substantially consummated, upon request of the Debtor, the United States trustee, or the holder of an allowed unsecured claim, to (a) increase or reduce the amount of payments on claims of a particular class provided for by the plan; (b) extend or reduce the time period for such payments; or (c) alter the amount of the Distribution to a creditor whose claim is provided for by the Plan to the extent necessary to take account of any payment of such claim made other than under the Plan.

## ARTICLE XI
### RETENTION OF JURISDICTION

11.1 From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible over the liquidated case for the following purposes:

(a) to hear and determine any and all objections to the allowance of any Claim or any controversy as to the classification of Claims;

(b) to hear and determine any and all applications for compensation and reimbursement of expenses to professionals as well as to hear and determine claims entitled to priority under Section 507(a)(1) of the Bankruptcy Code;

(c) to enable the Debtor to prosecute any and all proceedings which may be brought to set aside liens or encumbrances and to recover any transfers, assets, properties or damages to which

16

the Debtor may be entitled under applicable provisions of the Bankruptcy Code or any other Federal, State or local laws; including Causes of Action, controversies, disputes, and conflicts between the Debtor and any other party, including but not limited to any Causes of Action for objections to claims, preferences or fraudulent transfers and obligations or equitable subordination; and to enter any order assuring that good, sufficient and marketable legal title is conveyed to the purchaser of the Debtor's property;

(d) to consider any necessary valuation issues under Section 506 of the Bankruptcy Code, and any proceeding to determine the amount, validity and priority of liens, in connection with the Debtor's property;

(e) to determine the rights of any party in respect of the assumption or rejection of any executory contracts or unexpired leases;

(f) to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order, as may be necessary to carry out the purposes and intent of this Plan;

(g) to modify this Plan after the Confirmation Date, pursuant to the Bankruptcy Code;

(h) to enforce and interpret the terms and conditions of this Plan;

(i) to enter orders to enforce the title, rights and power of the Estate as the Court may deem necessary; and

(j) to enter orders concluding and closing this case.

## ARTICLE XII
### MISCELLANEOUS

12.1 <u>Allowed and Disallowed Claims</u>. Notwithstanding any other provisions of the Plan, any claim which is scheduled as disputed, contingent, or unliquidated or which is objected to in whole or in part on or before the date for Distribution, shall not be paid in accordance with the

17

provisions of the Plan until such claim has become an allowed claim by a Final Order. If allowed, the claim shall be paid on the same terms as if there had been no dispute.

12.2 <u>Headings</u>. Headings are utilized in this Plan for the convenience of reference only, and shall not constitute a part of this Plan for any other purpose.

12.3 <u>Defects, Omissions and Amendments</u>. This Plan may be altered, amended or modified by the Debtor before or after the Confirmation Date as provided in Section 1127 of the Bankruptcy Code and as set forth in Article X herein and Article X of the Disclosure Statement.

12.4 <u>Governing Law</u>. Except to the extent that the Bankruptcy Code or Florida Corporate Law is applicable, all rights and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of Florida.

12.5 <u>Severability</u>. Should any provision in this Plan be determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of this Plan.

12.6 <u>Regulatory Approval</u>. No regulatory approval is necessary for the confirmation of this Plan.

*[Remainder of Page Intentionally Left Blank]*

18

This Plan of Reorganization is respectfully submitted:

SJKWD, LLC

BY: _____
        STAN JACKOWSKI, MANAGING MEMBER


FURR & COHEN, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 301E
Boca Raton, FL 33431
561-395-0500
561-338-7532 fax

By: /s/ *Aaron A. Wernick*
        Aaron A. Wernick, Esq.
        Florida Bar No. 14059
        awernick@furrcohen.com

This Plan of Reorganization is respectfully submitted:

SJKWD, LLC

By: _____
STAN JACKOWSKI, MANAGING MEMBER

FURR & COHEN, P.A.
*Attorneys for the Debtor*
2255 Glades Road, Suite 301E
Boca Raton, FL 33431
561-395-0500
561-338-7532 fax

By: /s/ *Aaron A. Wernick*
        Aaron A. Wernick, Esq.
        Florida Bar No. 14059
        awernick@furrcohen.com